John C. Sims, Jr., and Lucille C. Sims v. Commissioner.
Sims v. Commissioner
Docket No. 1101-64.
United States Tax Court
T.C. Memo 1966-18; 1966 Tax Ct. Memo LEXIS 261; 25 T.C.M. (CCH) 99; T.C.M. (RIA) 66018; January 25, 1966
*261 In an agreement dated February 15, 1950, Remington Rand, Inc., agreed to pay petitioner, John C. Sims, Jr., a certain fixed amount upon receipt of stock owned by petitioner in a corporation and certain annual percentage payments representing a continuing participation in corporation profits and income from the license and sale of patents. Held: Payments received by petitioner from Sperry Rand Corporation in 1959 pursuant to a settlement agreement are taxable as capital gains. John R. Berman, for the petitioners. Raoul E. Paradis, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency in the income tax of petitioners for the calendar year 1959 in the amount of $2,150.97. The sole issue is whether certain amounts received by petitioner John C. Sims, Jr. from the Sperry Rand Corporation in 1959 pursuant to a settlement agreement, as amended, are taxable as ordinary income or capital gain. Findings of Fact Petitioners are husband and wife who reside in Sudbury, Massachusetts. They filed their Federal income tax return for the calendar year 1959 with the district director of internal revenue at Boston, *262 Massachusetts. Since Lucille C. Sims is a party hereto solely by reason of having filed a joint return with her husband, John C. Sims, Jr. hereafter will be referred to as petitioner. From 1948 until sometime in 1958 subsequent to February 15, 1958, petitioner was employed by the Eckert-Mauchly Computer Corporation (hereinafter referred to as Computer), to perform engineering work, primarily in the design of the physical parts of computers, such as the structure, frame-work and cooling fans, but not electronic devices. On August 9, 1948, he purchased 100 shares of the common stock of Computer for $500. Computer is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. Prior to February 6, 1950, 13,500 shares of the outstanding common stock of Computer were owned by Electronic Control Company (hereinafter referred to as Electronic), a partnership organized under Pennsylvania law composed of John Presper Eckert, Jr. (hereinafter referred to as Eckert), and John W. Mauchly (hereinafter referred to as Mauchly). Eckert was petitioner's brother-in-law. Another 2,835 shares of Computer common stock, including the 100 shares owned by petitioner, *263 were held by seven employees of Computer; 1,500 shares of common stock and 1,500 shares of preferred stock were held by thirteen other individuals; and the remainder of Computer's outstanding stock, but less than 50 percent of such stock, was owned by American Totalisator Company (hereinafter referred to as Totalisator). In an agreement dated February 6, 1950, Electronic, in consideration of $1,000 paid on that date, agreed to sell to Remington Rand, Inc. (hereinafter referred to as Remington), a Delaware corporation with its principal place of business in New York, New York, on or before February 15, 1950, 17,835 shares of common stock and 1,500 shares of preferred stock of Computer, constituting all of the outstanding stock of Computer with the exception of that held by Totalisator. Remington agreed to deliver to Electronic upon receiving the stock the further sum of $119,000 and further agreed to enter into an agreement with Electronic to pay to Electronic or its designees an amount equal to 5 percent of the net profits of Computer for a period of 8 years with a guaranteed minimum payment of $5,000 annually after the first 2 years. The agreement provided that in the event Electronic *264 was unable to deliver the 1,500 shares of common stock and 1,500 shares of preferred stock held by the other individuals, Remington would proceed with the agreement under an adjustment of the balance of the purchase price, but in no event more than $20 for a unit of one share of common and one share of preferred stock. On February 15, 1950, Electronic and Remington entered into a further agreement relating to the sale of Computer stock, the pertinent provisions of which are as follows: This Agreement dated this fifteenth day of February, 1950, by and between Electronic Control Company, a partnership with post office address at 1006 W. Cliveden Street, Philadelphia 19, Pennsylvania, comprising John W. Mauchly and John Presper Eckert, Jr., hereinafter referred to as the COMPANY, and REMINGTON RAND, INC., a Delaware Corporation having a place of business at 315 Fourth Avenue, New York, New York, hereinafter referred to as the CORPORATION. WITNESSETH WHEREAS, the COMPANY is possessed of substantial holdings of the common stock of Eckert-Mauchly Computer Corporation, a Pennsylvania Corporation having its principal place of business at Philadelphia, Pennsylvania, and WHEREAS, the *265 CORPORATION desires to acquire common stock of Eckert-Mauchly Computer Corporation, and WHEREAS, the parties have entered into a preliminary agreement of February sixth, 1950 relating to the purchase and sale of said common stock, and WHEREAS, John W. Mauchly and John Presper Eckert, Jr. are presently bound to Eckert-Mauchly Computer Corporation under an employment agreement dated May tenth, 1948, and WHEREAS, a portion of the shares of Eckert-Mauchly Computer Corporation are held by certain other persons, NOW, THEREFORE, in consideration of the mutual premises herein contained and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree and have agreed as follows: 1. Upon the execution of this Agreement, the COMPANY agrees to deliver to the CORPORATION a certificate representing Thirteen Thousand Five Hundred (13,500) shares of the common stock of Eckert-Mauchly Computer Corporation, properly endorsed to the CORPORATION, free and clear of any incumberances and in good marketable condition. 2. As payment for said shares, the CORPORATION agrees to pay to the COMPANY Seventy-Three Thousand Three Hundred Seventy-Nine Dollars *266 and Fifteen Cents ($73,379.15) in addition to the One Thousand ($1000.00) heretofore paid at the time of delivery of said certificate. 3. The CORPORATION agrees that in addition to the foregoing payment and in addition to compensation to be paid to John W. Mauchly and John Presper Eckert, Jr., and in consideration of their employment by Eckert-Mauchly Computer Corporation or an affiliate thereof, or by the CORPORATION or an affiliate, the CORPORATION will for a period of eight years (8 years) from the date of this agreement on condition that neither the said John W. Mauchly and John Presper Ecket[Eckert], Jr. shall during this period engage in competitive employment for the benefit of himself or others in which event all payments shall cease, cause to be paid to the COMPANY an amount equal to Five Percent (5%) of the net profits after all taxes, realized by the Eckert-Mauchly Computer Corporation or any affiliate thereof or by the CORPORATION or an affiliate from the sale and/or lease and/or use on behalf of others of apparatus determined by the CORPORATION to be based essentially on designs or inventions produced by the staff of Eckert-Mauchly Computer Corporation or by personnel *267 now members of that staff during their employment by Eckert-Mauchly Computer Corporation or an affiliate thereof, or during their employment by the Corporation or an affiliate. * * *
4. In addition, the CORPORATION shall cause to be paid to the COMPANY an amount equal to one-half of the income derived during the term of this agreement from the license or sale of United States or foreign patents based upon inventions made by the personnel defined in the foregoing paragraph 2. * * *
6. The COMPANY agrees that purchases of the common stock of Eckert-Mauchly Computer Corporation in the amount set forth from the persons listed below shall be regarded as purchases from the COMPANY for the purposes of said agreement of February sixth, 1950. Calvin S. Bosin
100 Shares
$ 551.00
George V. Eltgroth
230 Shares
1,267.30
Robert F. Shaw
659 Shares
3,631.09
C. Bradford Sheppard
823 Shares
4,534.73
John C. Sims, Jr.
100 Shares
551.00
H. Fraser Welsh
823 Shares
4,534.73
James R. Weiner
100 Shares
551.00
7. The COMPANY hereby authorizes and consents to the abatement of payments receivable by the COMPANY during the term of this agreement and the *268 payment of such abatement to the persons listed below, such abatement to be limited to the proportion identified with each named individual. Calvin S. Bosin
2 1/2 per centum
George V. Eltgroth
5 per centum
Robert F. Shaw
5 per centum
C. Bradford Sheppard
1 per centum
John C. Sims, Jr.
2 1/2 per centum
H. Fraser Welsh
6 per centum
James R. Weiner
5 per centum
With the exception of the payment specified to Mr. C. Bradford Sheppard, agreement by the CORPORATION with such individuals to make said payments, shall be personal and shall include the following limitation: PROVIDED, HOWEVER, that when the named person ceases voluntarily and in the absence of reasonable cause on the part of their employer to be actively associated, as an employee of Eckert-Mauchly Computer Corporation, or Remington Rand Inc., or an affiliate thereof, with activities in the field with respect to which continuing participation payments are made, or die, and the said John W. Mauchly and the said John Presper Eckert, Jr., jointly, shall notify the agency within Remington Rand, Inc., charged with the responsibility of making such payments, of their election to terminate such payments, *269 the right of the named persons to receive any share of the continuing participation not already accrued shall cease and determine, and that the share so forfeited shall thereafter be paid to the said Electronic Control Company. 8. * * * Beginning February fifteenth, 1952, and during the remainder of the term of this agreement, namely the eight year period from the date hereof as set forth in paragraph 3, the CORPORATION shall or it will cause to be guaranteed a minimum annual payment of Five Thousand Dollars, ($5,000.00), payable in advance and subject to modification in its distribution in the manner provided in the foregoing Paragraph 7, such sum to be available to the CORPORATION or the party paying such minimum annual amount as a credit against amounts coming due under this agreement during the corresponding year. * * *
10. The CORPORATION guarantees that the annual salary received by John W. Mauchly and the annual salary received by John Presper Eckert, Jr., during the balance of their employment under the said agreement of May tenth, 1948 shall not be less than Eighteen Thousand Dollars ($18,000.00) each, and that said agreement of May tenth, 1948 shall be construed *270 as binding upon successors to Eckert-Mauchly Computer Corporation and is joint and several in nature. * * *
IN WITNESS WHEREOF, the parties hereto have executed this agreement in New York, New York, this fifteenth day of February 1950. [Signatures omitted.] On the same date, February 15, 1950, petitioner entered into an agreement with Remington relating to the sale of his 100 shares of Computer common stock to Remington, as follows: This agreement entered into this fifteenth day of February 1950 by and between John C. Sims, Jr., hereinafter referred to as SIMS, whose post office address is Bethlehem Pike, Spring House, Pennsylvania, and REMINGTON RAND, INC. a Delaware Corporation having a place of business at 315 Fourth Avenue, New York, New York; WITNESSETH WHEREAS, SIMS is the owner of One Hundred shares of the common stock of Eckert-Mauchly Computer Corporation, a Pennsylvania Corporation having its principal office in Philadelphia, Pennsylvania, and WHEREAS, REMINGTON RAND, INC., desires to acquire ownership of said shares, and WHEREAS, under an agreement of even date herewith by and between Electronic Control Company, comprising the partners John W. Mauchly *271 and John Presper Eckert, Jr., and REMINGTON RAND, INC., REMINGTON RAND, INC., is bound to make payment to the said Electronic Control Company or its designee of Five per cent (5%) of the profits from certain defined activities, with minimum guarantees therein specified, until February 15, 1958, such sums being hereinafter referred to as continuing participation, and WHEREAS, the said Electronic Control Company has designated that SIMS is to receive a portion of the continuing participation, under said agreement, NOW, THEREFORE, in consideration of the premises, the mutual promises herein contained, and other good and valuable consideration, receipt of which is hereby acknowledged by the parties, the parties hereto agree and have agreed as follows: 1. SIMS will deliver with a signed copy of this agreement a properly indorsed certificate representing One Hundred shares of the common stock of Eckert-Mauchly Computer Corporation, free and clear of any encumbrances and in good marketable condition. 2. REMINGTON RAND, INC. agrees to pay to SIMS $551.00 at the time of delivery of the stock certificate and 2 1/2 percentum of the continuing participation to which Electronic Control *272 Company is entitled under said agreement during the entire term of said agreement, PROVIDED, HOWEVER, that when SIMS ceases voluntarily and in the absence of reasonable cause on the part of his employer to be actively associated, as an employee of REMINGTON RAND, INC., or an affiliate thereof, with activities in the field with respect to which continuing participation payments are made, or dies, and the said John W. Mauchly and the said John Presper Eckert, Jr., jointly, shall notify the agency within REMINGTON RAND, INC., charged with the responsibility for making such payments, of their election to terminate such payments, the right of SIMS to receive any share of the continuing participation not already accrued shall cease and determine, and that the share so forfeited shall thereafter be paid to the said Electronic Control Company. 3. Any sums coming due under this agreement shall be paid according to the same time and proportional schedule established in said REMINGTON RAND, INC. - Electronic Control Company agreement. Payments shall be subject to the deduction of such taxes and assessments as may be required by law. 4. This agreement shall be binding upon and inure to the *273 benefit of REMINGTON RAND, INC., its successors, assigns, and legal representatives, and to the benefit of SIMS, personally, without right of assignment or anticipation. 5. All communications relating to this agreement shall be properly identified and sent to the above recited post office addresses. Either party may change its mailing address by ten days' notice in writing forwarded to the other. IN WITNESS WHEREOF the parties hereto have executed this instrument this fifteenth day of February 1950, at New York, New York. [Signatures omitted.] On June 30, 1955, Remington merged with the Sperry Corporation under the name of Sperry Rand Corporation (hereafter referred to as Sperry) and the merged corporation succeeded to the rights and obligations of Remington under its contract with Electronic of February 15, 1950. On November 10, 1955, Eckert and Mauchly gave notice pursuant to paragraph 7 of the February 15 agreement between Electronic and Remington to terminate payments to Shaw and Eltgroth, who had voluntarily left the employment of Computer on June 15, 1951, and February 5, 1954, respectively, of their percentage interest in the continued participation in Computer's profits *274 to which Electronic was entitled under the agreement. In 1956, Sperry brought a suit against IBM charging "predatory practices, and seeking treble damages. Thereafter Sperry and IBM negotiated an out-of-court settlement whereby IBM received licenses under the Eckert-Mauchly patents and other patents held by Sperry in the electronics field, and IBM agreed to pay Sperry royalties aggregating approximately ten million dollars based upon estimated gross sales of IBM over a period of eight years. Subsequent to the settlement between Sperry and IBM, Eckert and Mauchly asserted a claim against Sperry, under paragraph 4 of the agreement dated February 15, 1950 between Electronic and Remington, for one-half of the income derived from the license or sale of their patents. On August 6, 1959, Sperry entered into a settlement agreement with Eckert, Mauchly, Bosin, Sheppard, Welsh, Weiner and petitioner (hereinafter referred to as the Eckert-Mauchly group) as follows: SETTLEMENT AGREEMENT This Agreement made the 6th day of August, 1959, between Sperry Rand Corporation (party of the first part) and J. Presper Eckert, Jr., John W. Mauchly, Calvin S. Bosin, C. Bradford Sheppard, John C. Sims, *275 Jr., H. Frazer Welsh and James R. Weiner (parties of the second part): WITNESSETH WHEREAS an agreement dated February 15, 1950 was entered into between Electronic Control Company (a partnership of John W. Mauchly and (John) Presper Eckert, Jr., with post office address at 1006 W. Cliveden Street, Philadelphia, Pennsylvania) and Remington Rand, Inc. (a Delaware corporation having a place of business at 315 Fourth Avenue, New York, New York); and WHEREAS paragraph 2 of the agreement of February 15, 1950 (hereafter sometimes referred to as "that agreement") provided, inter alia, for purchase by Remington Rand, Inc. from Electronic Control Company of 13,500 shares of the common stock of Eckert-Mauchly Computer Corporation in return for a lumpsum payment to Electronic Control Company of $74,379.15, and paragraph 4 of that agreement provided for an additional payment by Remington Rand, Inc. of "an amount equal to one-half of the income derived during the term of this agreement from the license or sale of United States or foreign patents based on inventions made by the personnel of the Electronic Control Company;" and WHEREAS under paragraph 7 of that agreement, Electronic Control *276 Company agreed that any additional payment due thereunder during the life of the agreement could be abated and made directly to the following persons in the percentages set opposite their respective names, the balance being payable to Messrs. Eckert and Mauchly: Calvin S. Bosin
2.5%
George V. Eltgroth
5
Robert F. Shaw
5
C. Bradford Sheppard
1
John C. Sims, Jr.
2.5
H. Fraser Welsh
6
James R. Weiner
5
WHEREAS paragraph 7 of that agreement further provided that, with the exception of the payments to Mr. Sheppard, payments to the above individuals should be personal and subject to the following limitation: "PROVIDED, HOWEVER, that when the named person ceases voluntarily and in the absence of reasonable cause on the part of their employer to be actively associated, as an employee of Eckert-Mauchly Computer Corporation, or Remington Rand Inc., or an affiliate thereof, with activities in the field with respect to which continuing participation payments are made, or die, and the said John W. Mauchly and the said John Presper Eckert, Jr., jointly, shall notify the agency within Remington Rand Inc., charged with the responsibility of making such payments, of *277 their election to terminate such payments, the right of the named persons to receive any share of the continuing participation not already accrued shall cease and determine, and that the share so forfeited shall thereafter be paid to the said Electronic Control Company."; and WHEREAS on February 5, 1954, the said George V. Eltgroth ceased voluntarily and in the absence of reasonable cause on the part of his employer to be actively associated as an employee of Eckert-Mauchly Computer Corporation or Remington Rand, Inc. or any affiliate thereof, as did Robert F. Shaw on June 15, 1951, and pursuant to the agreement, John W. Mauchly and (John) Presper Eckert, Jr. jointly notified Remington Rand, Inc. to terminate payments to the said Eltgroth and Shaw in a letter dated November 10, 1955; and by reason of such notification they ceased to be entitled to any further payments under the terms of Paragraph 7 of that agreement; and WHEREAS on June 30, 1955, Remington Rand, Inc. merged with The Sperry Corporation, under the name of Sperry Rand Corporation and the merged corporation succeeded to the rights and obligations of Remington Rand, Inc. under that agreement; and WHEREAS the rights *278 of the remaining participants under that agreement became fixed by reason of their employment status at the expiration of the agreement on February 15, 1958 - such remaining participants, together with John W. Mauchly and (John) Presper Eckert, Jr., being hereafter collectively described as "the Eckert-Mauchly group"; and WHEREAS the Eckert-Mauchly group has asserted that they are entitled to additional consideration for the sale of their stock under Paragraph 4 of that agreement which, as set forth above, may entitle them to one half of the income derived during its term from the license or sale of United States or foreign patents; and WHEREAS Sperry Rand Corporation denies any liability for any payments to the Eckert-Mauchly group either as consideration for the sale of stock under that agreement or otherwise. NOW, THEREFORE, it is agreed between the Sperry Rand Corporation and the Eckert-Mauchly group to settle such dispute as follows: 1. Sperry Rand Corporation will pay the members of the Eckert-Mauchly group a total of $500,000 - such payments to be made in the percentages and amounts set forth below, and to be paid without interest thereon in ten equal annual instalments *279 - the first instalment to be due on August 1, 1959, and each subsequent instalment to be due on the anniversary date thereof - and sent to the addresses shown below until such time as other addresses are communicated to Sperry Rand by the payees: * * *
Annual
Total
Instalment
John C. Sims, Jr.
$12,500.00
$1,250.00
Maple Ave.
Sudbury, Mass.
* * *
2. The Eckert-Mauchly group agrees that the above payments shall constitute full and complete satisfaction and discharge of any claims which they, or any of them, might have under the agreement of February 15, 1950. 3. The Eckert-Mauchly group releases and discharges Sperry Rand Corporation (and its predecessor, Remington Rand, Inc.) from any and all claims they, or any of them, might have under any provisions of the agreement of February 15, 1950, and agree to indemnify and save harmless Sperry Rand Corporation, its successors and assigns from any and all damages, costs and expenses arising out of any claims, actions, causes of actions, at law or in equity which may or can be asserted or instituted against Sperry Rand Corporation or its successors and assigns by Electronic Control Company, *280 its successors or assigns or by said Eltgroth or said Shaw, their heirs, assigns or personal representatives or any person claiming by, through or under them, or on their behalf. 4. This agreement shall be governed by the laws of the State of New York, and shall be binding upon the parties hereto, their heirs, executors, administrators, successors and assigns. IN WITNESS WHEREOF the party of the first part has caused the foregoing Agreement to be duly executed in its corporate name by duly authorized officers and has caused its corporate seal to be affixed hereto; and the parties of the second part have hereunto set their hands and seals below and on the following four pages. [Signatures omitted.] Sometime in 1959 after the first installment due on August 1, 1959 had been paid, the settlement agreement was amended to allow payment of the remaining nine installments owing to petitioner in a single lump sum totalling $11,250 upon receipt by Sperry of the executed original of the amendment. Sperry reported its payments to petitioner in 1959 pursuant to the settlement agreement, as amended, on the Internal Revenue Service information return (Form 1099) as income in the form of *281 compensation paid to petitioner. On his Federal income tax return for the calendar year 1959, petitioner reported one-half the net amount of $12,219 ($12,500 minus legal and travel expenses in the amount of $281) received by him in 1959 pursuant to the settlement agreement with Sperry, as amended, as capital gains. Respondent, in his statutory notice of deficiency, determined that this amount of $12,219 is taxable as ordinary income. Opinion The only issue presented herein is whether net payments in the amount of $12,219 received by petitioner in 1959 pursuant to a settlement agreement dated August 6, 1959, between the Eckert-Mauchly group, including petitioner, and the Sperry Rand Corporation, as amended, are taxable as ordinary income or capital gains. The settlement agreement arose out of a dispute regarding Sperry's liability to the Eckert-Mauchly group under paragraph 4 of an agreement, dated February 15, 1950, between Remington Rand, Inc. (later merged with The Sperry Corporation) and Electronic (a partnership comprised of Eckert and Mauchly), for one-half of the income derived from the license or sale of patents upon inventions developed by Eckert and Mauchly and transferred *282 to Computer. Petitioner contends that the payments in question constituted consideration for the sale of his stock in Computer to Remington as evidenced by his individual contract with Remington on the same date, February 15, 1950. Respondent contends that the payments in question represented additional compensation received by petitioner in 1959 for past services rendered. In support of his contention that the payments in question represented compensation for services rendered, respondent relies primarily upon the proviso contained in paragraph 2 of the agreement dated February 15, 1950, between petitioner and Remington, as interpreted in the light of paragraphs 3 and 7 of the agreement dated February 15, 1950, between Electronic and Remington, and upon this Court's opinion in the case of J. Presper Eckert, Jr., (T.C. Memo. 1960-259), filed November 30, 1960, which respondent argues is "so closely akin to the instant case as to be controlling" herein. In our opinion, the Eckert case is distinguishable as is also the case of John W. Mauchly v. United States (E.D. Pa., 1964), [1] cited by petitioner. Neither case involved the agreement of February 15, 1950 between petitioner and *283 Remington. The information furnished regarding the Mauchly case does not justify further discussion of that case. In the Eckert case the question presented was whether the share-of-profits payments received by Eckert in 1952 and 1953 pursuant to paragraph 3 of the agreement of February 15, 1950 between the partnership (Electronic) and Remington represented compensation for services rendered or to be rendered by Eckert, or constituted consideration for his transfer of common stock of the Computer Corporation. This Court held that the share-of-profits payments received by Eckert in 1952 and 1953 represented additional compensation for the continued rendition of his services to the Eckert-Mauchly Computer Corporation. In so holding the Court took note of the qualifications of Eckert as a graduate electrical engineer and *284 his participation with Mauchly in the development of the electronic computer (later known as "Univac"), and of the imperative need for Eckert and Mauchly to continue, without competitive engagement, in the employment of Computer corporation to which the basic patents had been transferred, at least until Univac had been sufficiently developed as to become marketable. The Court placed special emphasis on paragraph 3 of the agreement between Electronic and Remington providing for share-of-profits payments to the partnership "in consideration of" the employment of Mauchly and Eckert. The individual agreement between petitioner and Remington contains no provision specifically providing that any of the payments provided for therein were to be made "in consideration of" petitioner's employment. The reference therein (in a "WHEREAS" clause) to the agreement between Electronic and Remington was obviously intended only as an explanation or definition of the term "continuing participation payments." Nor, in our opinion, is the proviso contained in paragraph 2 of the agreement between petitioner and Remington to be construed as implying that the payments to be made to petitioner were "in consideration *285 of" his employment. True, the "share-of-profits" payments to petitioner could be cut off in the event he voluntarily ceased to remain in the employment of Remington or an affiliate, but they were not to be cut off during the term of the agreement, even though he ceased to be so employed, unless Eckert and Mauchly so elected and notified Remington. In our opinion, this proviso was merely a limitation of the period over which such payments were to be made to petitioner, just as the eight years mentioned in the agreement between Electronic and Remington determined the overall period during which the share-of-profits and patent income payments were to be made to Eckert and Mauchly or their assignees. The proviso did not affect or change the nature or character of the payments to petitioner. Such payments, as paragraph 2 of the agreement between petitioner and Remington clearly provides, were a part of the consideration which petitioner was to receive for the sale of his Computer stock to Remington. The payments made to petitioner as the result of the compromise of the claim asserted by the Eckert-Mauchly group to one-half of the income received by Sperry from the license or sale of the *286 electronic computer patents, were of the same character. The history of the negotiations relating to the various agreements clearly supports the above conclusions. Prior to 1950, Eckert and Mauchly, while employed by the University of Pennsylvania, had developed an electronic computer for which they had been permitted to acquire the basic patents. They first formed a partnership, known as Electronic Control Company, for the further development of electronic computers, and later fromed a corporation, known as Eckert-Mauchly Computer Corporation, to which the partnership transferred the basic patents in exchange for all of the stock in Computer. Thereafter, Computer issued additional stock to certain of its employees and to a group of small investors. In 1948, American Totalisator Company acquired 12,400 shares of Computer stock at $5 per share and agreed to make certain loans and contributions to the capital of Computer. As required by Totalisator prior to its investment in Computer, on May 10, 1948, Eckert and Mauchly entered into an employment agreement with Computer whereby they jointly and severally agreed for a period of 10 years from the date thereof to render personal services *287 to the corporation at such compensation as the board of directors might from time to time determine and agreed not to directly or indirectly engage in employment with others competitive with the enterprise of Computer. From 1948 to February 1950, Computer was engaged in the further development and design of the Univac electronic computer and in connection therewith in some governmental work. Mauchly was president, Eckert was vice president, and Henry Strauss, secretary and treasurer of Totalisator, was chairman of the Board of Directors of Computer. In late 1949, Strauss and the then general manager of Totalisator were killed in an airplane accident. Thereafter the officers of Totalisator indicated their desire to dispose of Totalisator's interest in Computer and requested Eckert and Mauchly to assist them in finding a buyer. Remington Rand, Inc. became interested in the business of Computer but indicated it was only interested in purchasing all of the outstanding stock of Computer and not merely a portion thereof. In their negotiations with Remington, Eckert and Mauchly requested that they be given a 5 percent interest in the profits of Computer. On February 6, 1950, Electronic *288 entered into an agreement with Remington whereby it agreed to sell and deliver to Remington 17,835 shares of common stock and 1,500 shares of preferred stock of Computer, being all of the outstanding stock of Computer except that held by Totalisator, in consideration of $1,000 paid on the date of the agreement, $119,000 to be paid upon delivery of the stock and Remington's agreement to pay Electronic 5 percent of the profits of Computer, with a guaranteed minimum payment of $5,000 annually after the first two years. [2] The parties to this agreement recognized that Electronic might not be able to deliver the 1,500 shares of common and 1,500 shares of preferred held by thirteen individuals. Accordingly, it was provided that in the event Electronic was unable to deliver such shares, Remington would nevertheless proceed with the agreement, subject to an adjustment of the purchase price. Following the agreement of February 6, 1950, it developed that the owners of the shares of Computer covered by *289 that agreement, other than Electronic, were not willing to sell their shares at the price determined by the agreement of February 6, 1950, and preferred to negotiate for the sale of their shares directly with Remington. As a result Electronic and Remington entered into the agreement of February 15, 1950, set forth at length in our Findings, and petitioner entered into a separate agreement with Remington, likewise set forth at length in our Findings, on the same date. In the agreement with Electronic, Remington agreed to pay Electronic $74,379.15 for the 13,500 shares of Computer common stock owned by Electronic and to make the additional payments set forth in paragraphs 3 and 4 of said agreement. It was agreed that the purchases of common stock of Computer from the seven persons listed therein, including petitioner, would be regarded as purchases from Electronic for the purposes of the February 6, 1950 agreement, and Electronic agreed to an abatement of the "payments receivable" by it during the term of this agreement (presumably the share-of-profits and patent income payments) and the payment of such abatement to the persons and in the proportions listed. It was further provided, *290 however, that in event the named person (with one exception) should cease to be an employee of Computer or an affiliate and Eckert and Mauchly so elected and notified Remington, the right of the named person to receive such participation payments should cease and the share so forfeited should thereafter be paid to Electronic. Thus, it appears that Remington's agreement to pay certain percentages of the participating payments, otherwise payable to Electronic, directly to the named individuals, including petitioner, owning 2,835 shares of the common stock of Computer, in addition to $5.51 per share in cash, was for the purpose of inducing them to sell their stock to Remington and was not intended to be compensation for services to be rendered by such individuals. Paragraphs 1 and 2 of the agreement between petitioner and Remington provided that upon delivery of a properly indorsed certificate for one hundred shares of the common stock of Computer, Remington would "pay to SIMS $551.00 * * * and 2 1/2 percentum of the continuing participation to which Electronic Control Company is entitled * * *." Both the cash payments and the percentage payments were intended to be consideration *291 for the sale and transfer by petitioner of his stock in Computer. The payments made to petitioners under the compromise agreement between the Eckert-Mauchly group and Sperry were of the same character. Accordingly we hold that the net payments in the amount of $12,219 received by petitioner in 1959 pursuant to the settlement agreement dated August 6, 1959, between the Eckert-Mauchly group, including petitioner, and the Sperry Rand Corporation, as amended, are taxable to petitioners as capital gains and not as ordinary income. Decision will be entered for the petitioners. Footnotes
1. Our attention has not been called to any written opinion in the Mauchly case. The "Charge of the Court" to the jury and the "Judgment" of the Court are set forth in and 15 AFTR (2d) (PH) at p. 239, respectively. On brief, respondent stated an appeal had been noted in the Mauchly case. Apparently it was withdrawn. See CCH 1965, Vol. 7, p. 70,758.↩
2. Remington acquired all the Computer stock, both common and preferred, then owned by Totalisator, under a separate agreement made with Totalisator on the same date, February 6, 1950.↩